# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANN MARIE PALMER, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 07 C 5708 |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) Judge Nan R. Nolan ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff Ann Marie Palmer filed an action seeking review of the final decision of the Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Social Security Act. 42 U.S.C. §§ 416, 423(d), 1381a. On February 5, 2009, the court remanded the case to the Administrative Law Judge ("ALJ") for further evaluation. Ms. Palmer now seeks to recover her attorneys' fees pursuant to the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412(d), arguing that the Commissioner's position in defending the decision of the ALJ was not "substantially justified." For the reasons set forth here, the application for fees is granted.

## BACKGROUND[1]

Ms. Palmer applied for DIB on March 7, 1994, alleging that she became disabled on October 23, 1992 due to neck pain, headaches, and pain in her hands, wrists and fingers caused by an automobile accident. The Social Security Administration ("SSA") denied her application initially and on reconsideration. Following several hearings over a two-year period, the ALJ denied Ms. Palmer's claim for benefits, finding that she had engaged in substantial gainful activity ("SGA") prior to the expiration of her insured status on December 31, 1993. The SSA Appeals Council denied

---

[1] This order presumes familiarity with the court's February 5, 2009 Memorandum Opinion and Order, Docket No. 46.

Ms. Palmer's request for review, and a district court subsequently affirmed the decision on October 12, 2001. The Seventh Circuit, however, reversed and remanded the case, which was then assigned to a new ALJ, Robert T. Karmgard. Ms. Palmer, who by then had submitted an additional application for SSI, attended some five hearings before ALJ Karmgard between June 27, 2006 and February 22, 2007. On April 12, 2007, the ALJ denied Ms. Palmer's claim for benefits, finding that she is capable of performing light work.

The SSA Appeals Council denied Ms. Palmer's request for review, so she sought review of the Commissioner's decision before this court under 42 U.S.C. § 405(g). Ms. Palmer argued that (1) the ALJ erred in failing to make a determination at step one of the analysis; (2) the ALJ erred in evaluating the testimony of Dr. Julian Freeman, a neurologist who testified as a medical expert ("ME"), and in making the residual functional capacity ("RFC") determination; (3) the ALJ failed to conduct a proper assessment of Ms. Palmer's credibility; and (4) the vocational expert ("VE") testimony was not supported by substantial evidence.

The court first held that the ALJ erred by failing to make a finding at step one of the five-step inquiry despite a remand from the Seventh Circuit on that issue. The court found, however, that by proceeding to an analysis of steps two through five, the ALJ made a de facto finding that Ms. Palmer did not engage in SGA prior to the expiration of her insured status date. The court next held that the ALJ acted properly in giving greater weight to the clinical observations regarding Ms. Palmer's condition than to the diagnostic tests and the ME's opinion. As for the ALJ's credibility determination, the court agreed that it was not patently wrong "in most respects." The court concluded, however, that the ALJ did err in failing to explain adequately why he rejected Ms. Palmer's claim that she cannot hold her head in one position, engage in repetitive grasping, or perform fine manipulative tasks. At step five of the analysis, the court found that "[t]he VE arguably made available sufficient data to support his conclusion regarding the number of jobs available to someone with Ms. Palmer's RFC," but advised that on remand, "the ALJ should take the opportunity

2

to make further inquiry into this issue and confirm that the VE's data and conclusions were sufficiently available and reliable." (Memorandum Opinion and Order, Doc. 46, at 30.)

On April 14, 2009, Ms. Palmer filed a timely application for fees in the amount of $12,580.50. *See Shalala v. Schaefer*, 509 U.S. 292, 302 (1993). The Commissioner objects that Ms. Palmer is not entitled to any fees and, alternatively, challenges the amount requested.

## DISCUSSION

**A.      Standard of Review**

Under the EAJA, a court may award attorneys' fees to a prevailing party in a civil suit against the government if the government's position was not "substantially justified." 28 U.S.C. § 2412(d)(1)(A). It is undisputed that Ms. Palmer has prevailing party status. *Schaefer*, 509 U.S. at 300. Thus, the only issue is whether the government's position was substantially justified; that is, whether it was "justified to a degree that could satisfy a reasonable person." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). The Seventh Circuit has held that "substantial justification" is demonstrated when the government's position is grounded in "(1) a reasonable basis in truth for the facts alleged; (2) a reasonable basis in law for the theory propounded; and (3) a reasonable connection between the facts alleged and the theory propounded." *Conrad v. Barnhart*, 434 F.3d 987, 990 (7th Cir. 2006). *See also Stewart v. Astrue*, 561 F.3d 679, 683 (7th Cir. 2009). In making a substantial justification determination, a court should consider both the government's litigation and pre-litigation conduct. *Cunningham v. Barnhart*, 440 F.3d 862, 863 (7th Cir. 2006). Merely prevailing in a lawsuit against the government does not automatically entitle a party to fees under the EAJA. However, the government bears the burden of establishing that its position was substantially justified. *Bricks, Inc. v. U.S. E.P.A.*, 426 F.3d 918, 922 (7th Cir. 2005); *Dickerson v. Astrue*, No. 06-988-DRH, 2009 WL 806617, at *2 (S.D. Ill. Mar. 26, 2009).

**B.      Analysis**

1.  **Substantial Justification**

In objecting to an award of fees, the Commissioner argues that the court reversed the ALJ's decision on only a single issue – namely, the failure to make a finding at step one of the analysis. In the Commissioner's view, this demonstrates that the ALJ was presented with a close question that supports a finding of substantial justification. (Def. Resp., at 2 (citing *Cummings v. Sullivan*, 950 F.2d 492, 498 (7th Cir. 1991) ("[T]he closeness of the question is, in itself, evidence of substantial justification.")).) The Seventh Circuit has noted that "being incorrect on one point does not translate into lacking substantial justification for one's litigation position during the entirety of a civil action." *Jackson v. Chater*, 94 F.3d 274, 279-80 (7th Cir. 1996). Here, however, the error went beyond step one of the analysis.

As noted, the ALJ failed to explain adequately why he rejected several of Ms. Palmer's claimed limitations. The ME testified that cervical imaging was consistent with Ms. Palmer's claim that she cannot hold her head in one position or engage in repetitive grasping, and there was no evidence that the treating or examining physicians tested for these limitations. The VE testified, moreover, that a person who is unable to hold her head in one position for prolonged periods of time, even with normal breaks, would not be capable of performing any work activity. The ALJ nonetheless relied on contrary clinical observations without providing an adequate explanation for rejecting Ms. Palmer's testimony as to these limitations.

With respect to fine manipulative tasks, Dr. John McMahon opined in April 2006 that Ms. Palmer "has been left with considerable left hand and arm sensory disturbance that compromises dexterity and functioning." (R. 979.) In addition, both Dr. McMahon and Dr. Thomas H. Hudgins noted that Ms. Palmer experienced numbness, which is consistent with Dr. Scott A. Kale's August 2005 finding that Ms. Palmer had "persistent left-hand numbness." (R. 858, 974, 980.) Yet a fourth physician, Dr. David E. Shapiro, agreed in September 2004 and again in December 2005 that Ms. Palmer was experiencing hand numbness. (R. 1087, 1204.) Ms. Palmer testified that she

4

experiences hand numbness, and the ME opined that Ms. Palmer's carpal tunnel syndrome is severe. Notwithstanding this evidence, the ALJ found Ms. Palmer capable of frequently performing fine, manipulative tasks. The ALJ's reasoning was inadequate and could not stand.

On the facts presented, the Commissioner was not substantially justified in his position that the record contained adequate evidence to support the ALJ's findings. Ms. Palmer is thus entitled to fees, and the court considers the amount requested.

### 2.    Amount of Fees

Ms. Palmer is seeking $12,580.50 for 71.60 hours of attorney work at an hourly rate of $172.50, and 2.7 hours of legal assistant time at an hourly rate of $85. The Commissioner claims that this amount is unreasonable, arguing generally that an attorney must exercise "billing judgment" by "winnowing the hours actually expended down to the hours reasonably expended." (Def. Resp., at 3 (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 552 (7th Cir. 1999).) The Commissioner further references an in-house study conducted back in the 1980s by Chief Judge Carl Rubin of the Southern District of Ohio in which the judge found that the average number of hours asserted in EAJA fee petitions was 37.3. *See Rodriquez v. Bowen*, 865 F.2d 739, 747 n.4 (6th Cir. 1989). Neither argument is persuasive here.

This case has a long and somewhat tortuous history. It began in 1994 and proceeded all the way to the Seventh Circuit before being remanded in 2002. In 2003, the case was reassigned to a new ALJ, who held five separate hearings between June 27, 2006 and February 22, 2007. The record was over 1,600 pages in length and there were many issues to address on appeal to this court. The Commissioner's statistic from the Sixth Circuit regarding the number of hours typically asserted in EAJA fee petitions is more than 10 years old and not persuasive in a case with this background. Indeed, Ms. Palmer has cited several recent cases where courts have awarded fees in the $12,000 range. *See, e.g., Seamon v. Barnhart*, No. 05-C-0013-C, 2006 WL 517631 (W.D. Wis. Feb. 23, 2006) (awarding $12,191.52 in EAJA fees); *Barrientos v. Barnhart*, No. 00 C 7407,

2004 WL 1381126 (N.D. Ill. May 7, 2004) (awarding $11,711.45 in fees); *Embry v. Barnhart*, No. 02 C 3821, 2003 WL 22478769 (N.D. Ill. Oct. 31, 2003) (awarding $10,188.96 in fees).

The Commissioner does not argue that the requested hourly rates are excessive, and given the history and scope of this case, the Commissioner has failed to demonstrate that the specific fees requested are excessive. Ms. Palmer's petition for EAJA fees is therefore granted in its entirety.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorney's Fees [48] is granted in the amount of $12,580.50.

ENTER:

Dated: May 13, 2009

_____
NAN R. NOLAN
United States Magistrate Judge